**Nancy J. Hungerford, OSB No. 812685**
E-mail: nancy@hungerfordlaw.com
**Richard G. Cohn-Lee, OSB No. 952331**
E-mail: rich@hungerfordlaw.com
THE HUNGERFORD LAW FIRM
PO Box 3010
Oregon City, Oregon 97045
Telephone: (503) 781-3458

    Attorneys for Plaintiff–Appellant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| **MEDFORD SCHOOL DISTRICT**,<br><br>    **Plaintiff–Appellant**,<br><br>v.<br><br>**STUDENT**,<br><br>    **Defendant–Appellee**. | Civil No. _____<br><br>**COMPLAINT**<br><br>(Appeal of Hearing Officer's Decision Pursuant to Individuals with Disabilities Education Act ("IDEA")) |

For its first claim for relief, plaintiff–appellant Medford School District (the "District") alleges as follows:

**CLAIM FOR RELIEF**
**(Appeal of Hearing Officer's Decision Pursuant to IDEA)**

NATURE OF ACTION

<u>Paragraph 1</u>

This is an appeal of an administrative law judge's ("ALJ") decision issued pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USCA §§ 1400 *et seq*.

1   -- COMPLAINT

## JURISDICTION AND VENUE

### Paragraph 2

This court has jurisdiction over this appeal pursuant to 20 USCA § 1415(i)(2) and (3)(A) and 28 USCA § 1331.

### Paragraph 3

The actions of the parties and the decision of the ALJ occurred in the District of Oregon.

## PARTIES

### Paragraph 4

At all times mentioned herein, the District was and is a duly recognized school district operating under the laws of the State of Oregon.

### Paragraph 5

Student is currently the age of majority and his current location is unknown to the District. During the period relating to this appeal, student was enrolled as a high school student in the District in Medford, Oregon until he was unilaterally withdrawn by his Guardian on February 10, 2021 to Star Guides, a wilderness program for sex offending youth in Utah, and then subsequently to White River Academy, also in Utah.

## FACTUAL ALLEGATIONS

### Paragraph 6

Student enrolled in the District in the Fall of 2018, entering South Medford High School as a 9th grader. On Oct. 1, 2018, the District conducted a file review, then obtained consent to evaluate on Oct. 26, 2018 to determine in-state eligibility. A recent medical statement noted only adjustment disorder and grief as medical conditions.

/////

2 -- COMPLAINT

Paragraph 7

The District conducted a BASC as part of the evaluation and the student's self-report raised no areas of concern (including in the areas of anxiety and depression), and the teachers rated only attention issues as clinically significant. The evaluation report noted student's impulsivity and difficulty making friends, although it noted that this could be attributable to the fact that student attended 12 schools in the past four years.

Paragraph 8

On Dec. 11, 2018, student and another female student engaged in inappropriate touching of another female student's private parts. The manifestation team found no manifestation and student and the other female student were expelled for the remainder of the school year. He enrolled in Medford Opportunity School for the third quarter, but in the fourth quarter, the expulsion was held in abeyance and he returned to South Medford High School for the 4th Quarter in early April 2019.

Paragraph 9

On Feb. 11, 2019, the District convened an eligibility team and found student eligible in the category of Other Health Impairment ("OHI"). His guardian participated in the eligibility meeting. The guardian did not request any further evaluation or raise any concerns about whether student had been adequately evaluated or might be eligible in other categories. Guardian never requested further evaluation or raised any concerns regarding student's eligibility categories until he filed his due process complaint in Dec. 2021.

Paragraph 10

Student was found eligible by another school district in 2014 under OHI and found not eligible for Specific Learning Disability ("SLD"), with such documentation also showing that

there was "NO Medical Statement provided," and no significant findings were listed on two separate scales for Emotional Disturbance ("ED"). In two separate observations for ED in 2014, it was observed in 2013 that he had "Hard time sitting still" but in 2014 he was observed as being "on task and completed assignment."

Paragraph 11

After testing by a school psychologist in February, 2019, including the BASC-3, student's IEP team met on March 8, 2019. The psychologist's report indicated that "all scales on [student's] self-report fell within the average range (not significant) including depression and anxiety." Furthermore, the report indicated that student "struggles with forethought and planning. His impulsivity can lead to inappropriate decisions and/or interactions at times." The IEP team found that student's "Other Health Impairment (due to an adjustment disorder diagnosis and previous treatment for ADHD) impacts his ability to maintain attention to task and alertness throughout the school day..."

Paragraph 12

The District convened an IEP meeting and drafted student's initial in-state IEP on March 8, 2019. Input provided by Guardian included the belief that student could keep up academically if he had support to complete tasks. The IEP included extensive information from the BASC rating scales and detailed testing in the area of math. The IEP's present levels of academic achievement and functional performance ("PLAAFP") noted that reading and written language were not areas of concern. Areas of need were noted as math and study skills. The IEP team drafted goals in the areas of math and task-related skills. The services summary included two hours per month of specially designed instruction in math and two hours per month of specially designed instruction in behavior. However, the student was enrolled in a daily study skills class

with a special education teacher and assistant and a small student enrollment to receive daily assistance in math and study skills. Services also included an extensive list of 14 accommodations and assistive technology. The IEP team agreed that student's IEP could be successfully implemented in full-time general education, with special education services provided within the regular education setting.

Paragraph 13

Student experienced no behavioral issues for the remainder of the 2018-19 school year. In the fall of 2019, he was part of a group of multiple students that engaged in several instances of "horseplay." Low-level interventions addressed the issue, and student did not receive any disciplinary action, or even a behavior referral. Student did not engage in any further behaviors in school after Oct. 2019, including the entire period covered by the statute of limitations beginning on Dec. 14, 2019.

Paragraph 14

The first grade reports that student received that fell within the statute of limitations period were issued in January 2020. Student received Bs in algebra, American studies, and welding; Cs in English and biology; and Ps in tutorial and band. Student's IEP progress report noted that he "is able to demonstrate an understanding of expressions and equations at the 6th grade level as measured by classroom-based measures. Task Related Skills Goal: [Student] is having difficulty demonstrating task-related skills in tutorial as measured by observation conducted on January 16, 2020."

Paragraph 15

The District conducted student's annual IEP review on March 2, 2020. Guardian concerns were that student needed to sit in the front of the room, and that communication should be sent

home when he was falling behind in his schoolwork.  Reading, written language, and social skills were all noted as not being areas of concern.  Instead, the IEP team agreed that areas of concern were math, study skills, and behavior but only as it related to task-related skills only.  The IEP team drafted goals in math and task-related skills, with two hours per month of specially designed instruction for each.  Retaining the same goal areas and service levels reflected the team's determination that student had made progress the prior year and continuation of the goal areas and service levels was therefore appropriate.

<u>Paragraph 16</u>

Transition planning and nine hours of transition services were added to the IEP in March 2020, and the team determined that student would pursue a standard diploma.  The IEP again included an extensive list of accommodations, including:

* break tasks into small steps

* monitor and adjust for student attention/frustration

* provide quite work area

* reinforce on-task behavior

* seat near instruction

* access to math tools

* organizational system

* extra time

* home/school communication weekly

* teach and reinforce self-regulation and coping strategies.

/////

/////

6      --   COMPLAINT

Paragraph 17

Student was again placed in general education, but specially designed instruction would now be provided through small group instruction. Special Ed Resource Teacher Audrey Bowley notified all classroom teachers that one of the accommodations was for Student to sit at the front of the classroom, and asked them to contact his Guardian if student needed extra support. Teachers were also notified that student was also involved with Winter Springs counseling weekly.

Paragraph 18

Student's next IEP progress report was issued only several weeks after new goals were drafted, so there was no progress yet to report. Student's third quarter progress grades was an A in band; Bs in welding, algebra, and biology; and Cs in health, history, and English.

Paragraph 19

In late March 2020, in response to the pandemic, the District placed all students on distance learning. During this 4th quarter of the 2019-20 school year, Guardian e-mailed staff and expressed that student was doing well, had caught up on all of his 3rd quarter work, and was passing all his classes, so he wanted to work on making up core credits he'd missed during the expulsion the previous year.

Paragraph 20

Student began credit recovery through Edgenuity and enrolled in summer school in the summer of 2020. He completed all credit recovery successfully.

Paragraph 21

As a result of distance learning during COVID, all students received only "Pass" or "No pass" as grades for fourth quarter. Student received all Ps for the final quarter. His IEP progress report similarly reflected sufficient progress in all goal areas.

Paragraph 22

Student received no behavior referrals or discipline of any kind for the remainder of the 2019-20 school year, either while in-person (Dec. 2019 – March 2020) or during distance learning (March – June 2020).

Paragraph 23

The District began the 2020-21 school year in Comprehensive Distance Learning ("CDL"). Student attended virtually from Sept – Dec 2021. In December, at Guardian's request, he began attending Limited In Person Learning ("LIPI") for band and English.

Paragraph 24

Throughout the fall of 2020, student's general education teachers responded to concerns from Guardian about student's lack of work completion. With teachers' assistance, student was able to get his work completed and pass all of his classes; he received an A, a B, a C, and 3 Ps on his first semester report card on Dec. 17, 2020. Student's first semester IEP progress report reflected progress toward his IEP goals, as well; he was meeting his math goal with 75% accuracy, and his task-related skills goal 3 out of 5 opportunities.

Paragraph 25

During 20-21, Student had no behavioral incidents, either in CDL or when attending LIPI, through the date that Guardian removed him from the District in February 2021.

Paragraph 26

On Feb. 10, 2021, student's guardian withdrew him from the District and unilaterally placed him in Star Guides – a wilderness treatment program with no educational program -- without informing the District that Guardian believed that the District did not have a FAPE or an appropriate placement available. According to the Star Guides Intake Report completed by staff

8     --   COMPLAINT

member Matt Bulkley, the placement was made "because of a pattern of sexual offending behaviors that required out of home treatment in a controlled setting." And "Half-brother [Guardian] can't allow Pt to reside at home due to sexual abuse of daughter. Safety plan ensures Pt is able to reside in a structured, supervised setting while getting help for depression, trauma and sexual abuse." The behaviors of sexual abuse by student had occurred in the home and involved family members.

Paragraph 27

In August 2021, Guardian unilaterally placed student at White River Academy, where he was to continue sexual offender treatment. In response, the District convened an IEP meeting on Sept. 1, 2021.

Paragraph 28

At the Sept. 1, 2021 IEP meeting, for the first time Guardian raised the possibility of additional diagnoses and eligibility in other IDEA categories. The District indicated its willingness to consider additional eligibilities once the guardians provided written documentation of additional diagnoses. Guardian agreed but then subsequently revoked all Releases of Information and refused to allow the District to access any information from outside providers.

Paragraph 29

The IEP team drafted math and social/emotional goals, and provided for 2160 minutes per year of specially designed instruction in math and 4320 minutes per year of specially designed instruction in social/emotional or the approximately 4 hours and 8 hours a month respectively of specially designed instruction. This specially designed instruction was in addition to the support student would receive in a small group setting with small group instruction as part of the

9    -- COMPLAINT

accommodations on his IEP. The Sept. 1, 2021 IEP also provided for multiple accommodations, including a behavior intervention plan and a safety plan. In response to the guardians' concerns about the safety of others, due to student's sexual offense, the IEP team selected a small special class with enhanced staffing as placement.

Paragraph 30

Guardian filed a request for due process hearing under IDEA through the Oregon Department of Education on December 14, 2021.

Paragraph 31

The hearing was conducted on May 23 through 27, 2022 by ALJ Jessica Toth, with an Amended Final Order entered on August 22, 2022 (attached as Exhibit 1).

Paragraph 32

Pursuant to 20 USCA § 1415(i)(2) and (3)(A) and ORS 343.175(4), the District hereby timely appeals portions of the findings of fact of the Amended Final Order as inaccurate and/or incomplete, including Findings of Fact 1, 7, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 53, 55, 56, 57, 59, 60, 61, 62, 63, and 64.

Paragraph 33

Pursuant to 20 USCA § 1415(i)(2) and (3)(A) and ORS 343.175(4), the District timely appeals portions of the Amended Final Order referenced in pages 15-34 in the following particulars and asks the court to reverse the following conclusions of law and/or orders:

a. That the District failed to evaluate the Student in all areas of suspected disability during the 2019-20 academic year, in violation of the IDEA and its implementing OARs and ORSs.;

10     -- COMPLAINT

b. That the District failed to properly identify Student as a student with a disability in all areas of suspected disability during the 2019-20 academic year, in violation of the IDEA and its implementing OARs and ORSs.;

c. That the District failed to provide Student with a FAPE during the 2019-20 academic year, in violation of the IDEA and its implementing OARs and ORSs.;

d. That the District failed to provide an appropriate placement for the Student during the 2019-20 academic year, which denied Student a FAPE in violation of the IDEA and its implementing OARs and ORSs.;

e. That the District failed to evaluate Student in all areas of suspected disability during the 2020-21 academic year, in violation of the IDEA and its implementing OARs and ORSs;

f. That the District failed to properly identify Student as a student with a disability in all areas of suspected disability during the 2020-21 academic year, in violation of the IDEA and its implementing OARs and ORSs.

g. That the District failed to provide Student with a FAPE during the 2020-21 academic year, in violation of the IDEA and its implementing OARs and ORSs;

h. That the District predetermined Student's placement, failed to provide an appropriate placement for the Student, and denied Guardian participation during the 2020-21 academic year, which denied Student a FAPE in violation of the IDEA and its implementing OARs and ORSs.

i. That the District failed to evaluate the Student in all areas of suspected disability during the 2021-22 academic year, in violation of the IDEA and its implementing OARs and ORSs.

j. That the District failed to properly identify Student as a student with a disability in all areas of suspected disability during the 2021-22 academic year, in violation of the IDEA and its implementing OARs and ORSs.

k. That the District failed to provide Student with a FAPE during the 2021-22 academic year, in violation of the IDEA and its implementing OARs and ORSs; and

l. That the District predetermined Student's placement, failed to provide an appropriate placement for the Student, and denied Guardian participation during the 2021-22 academic year, which denied Student a FAPE in violation of the IDEA and its implementing OARs and ORSs.

Paragraph 34

The District disagrees with the findings of fact and conclusions of law and/or orders described in Paragraphs 32-33 above. The District contends:

a. That the District properly evaluated in all areas of need and properly identified Student beginning in Dec. 2019 through February 2021 when he was unilaterally removed by Guardian from the District;

b. That the District provided Student with a FAPE, including an appropriate placement from December 2019 to February 2021

c. That the District did not predetermine Student's placement or deny Guardian participation in the IEP process during the 2020-21 or 2021-22 school years; and

d. That the ALJ's order awarding Guardian reimbursement for tuition and related expenses at White River Academy is inappropriate as Guardian's unilateral placement was made for reasons unrelated to Student's educational needs.

WHEREFORE, the District prays for judgment as follows:

1. On its claim for relief, that the August 9, 2022 findings of fact and conclusions of law of the ALJ listed in Paragraph 32-33 above should be reversed;

2. That the Order of the ALJ regarding an award of tuition reimbursement and costs at White River Academy should be reversed;

3. That the Court stay all remedies Ordered by the ALJ until a substantive appeal of the August 9, 2022 Amended Final Order is complete; and

4. For such other relief as the court deems just and proper.

Dated: September 9, 2022.

      s/ Richard G. Cohn-Lee
Richard G. Cohn-Lee, OSB No. 952331
Nancy J. Hungerford, OSB No. 812685
(503) 781-3458

Of Attorneys for Plaintiff–Appellant